**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

|  |  |  |
|---|---|---|
| STEVEN K.E. BRADFORD, | * | |
| Plaintiff, | * | Case No.: GJH-17-1080 |
| v. | * | |
| AVA JOUBERT, MD., *et al.*, | * | |
| Defendants.[1] | * | |

## MEMORANDUM OPINION

Plaintiff Steven K.E. Bradford, an inmate incarcerated at Maryland Correctional Institution-Hagerstown ("MCIH"), brings this *pro se* action under 42 U.S.C. § 1983 against Defendants Dr. Ava Joubert, Nurse Practitioner Maryanne Reimer, and Kim Holding ("Defendants"), alleging that Defendants failed to provide timely and adequate medical care in violation of the Eighth Amendment. Presently pending before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF No. 16. Plaintiff has been advised of his right to file an opposition to Defendants' Motion but has not done so. ECF No. 18. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion, construed as a Motion for Summary Judgment, is granted.

**I.   BACKGROUND**

Plaintiff sustained an injury to the left side of his face and eye in 2004 and now experiences chronic pain and migraine headaches. ECF No. 16-3 at 24–26 (medical records

---

[1] The Clerk is instructed to correct the docket to reflect the full and accurate spelling of Defendants' names.

1

documenting "left orbital floor facture [] 13 years ago").[2] Previously, Plaintiff was prescribed Ultram and Lyrica for pain management but voluntarily stopped taking the medication in April 2011. *Id.* Plaintiff alleges that his chronic pain returned in December of 2016 and that Defendants failed to provide him with timely medical attention and effective treatment. Defendants have provided a certified copy of Plaintiff's medical records documenting the treatment Plaintiff received starting in December of 2016, which is summarized herein. *See* ECF No. 16-3.[3]

On December 9, 2016, Plaintiff submitted a sick call slip requesting treatment for facial pain. Plaintiff was seen by a nurse on December 11th and issued a six-day supply of Tylenol on December 13th. Plaintiff submitted another sick call slip on December 21st and was seen by nurse Kira Froude on December 27th, who referred Plaintiff to a provider for further pain management treatment. Plaintiff was scheduled to see Reimer on December 30th but did not see her because Plaintiff was a "no-show."[4] Plaintiff was again scheduled to see Reimer on January 6, 2017, but she was detained by an emergency and unable to see him. Plaintiff submitted another sick call slip on February 9th, complaining of "serious" facial pain, and was referred to a provider after seeing Froude at sick call on February 14th.[5] Plaintiff submitted additional sick call slips on February 27th and March 6th and was referred to a provider after seeing a nurse at sick call on March 7th.

On March 21st, Plaintiff was seen by Joubert during a chronic care visit. Plaintiff stated that his chronic pain had returned 2.5 months ago but was not bad enough to get over-the-counter

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] Plaintiff's medical records are not in dispute and include the "sick call slips" attached to Plaintiff's Complaint.
[4] The record does not make clear whether Plaintiff was responsible for the missed appointment.
[5] Plaintiff was seen on February 10 and 15, 2017 for unrelated mental health visits and did not relay any complaints of serious pain. *See* ECF No. 16-3 at 9, 13.

2

medication. Plaintiff also complained of headaches. Joubert did not observe Plaintiff to be in acute distress, prescribed Plaintiff Tylenol, and ordered an x-ray. The x-ray was conducted on March 23rd and revealed no issues. Plaintiff submitted another sick call slip on March 25th, was seen by a nurse at sick call on March 30th, and was again referred to a provider. On April 28th, Plaintiff was seen by Reimer and prescribed Lyrica for pain management. Thereafter, Plaintiff's medical records indicate that Plaintiff continued to use the sick call process to see medical providers for chronic pain management and was provided various medications, including Lyrica, Ultram, and Tylenol.

While Plaintiff did not respond to Defendants' Motion, his Complaint includes additional exhibits not set forth in the medical records provided by Defendants. Notably, Plaintiff has provided a signed declaration from his "cell-buddy" Joseph Showwel stating that on March 3, 2017, Showwel was seen by Reimer for a medical examination and that Reimer refused to accept a note written by Plaintiff requesting further medical treatment that Showwel had delivered to her. ECF No. 1-10. Plaintiff also included an Administrative Remedy Response from the Maryland Division of Correction Headquarters on March 24, 2017, which directed MCIH to have Plaintiff "seen by a provider as soon as possible." ECF No. 1-7.

## II. STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss, or in the alternative, for summary judgment. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings, and the Court considers those matters, the court will treat the motion as one for summary judgment. *See Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Mansfield v. Kerry*, No. DKC-15-3693, 2016 WL 7383873, at *2 (D. Md. Dec. 21, 2016). All parties must be given some indication by the Court that it is treating a motion

to dismiss as one for summary judgment, "with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). When the moving party styles its motion as one for summary judgment and attaches additional materials to its motion, the non-moving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Furthermore, the Court informed Plaintiff by separate correspondence that a motion for summary judgment was pending. ECF No. 18.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Thus, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)) (alteration in original).

### III. DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate

4

indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the defendants were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he]

5

responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

Assuming Bradford's medical condition is a serious medical need for purposes of an Eighth Amendment claim, the undisputed evidence establishes that Plaintiff received treatment which progressed from conservative (Tylenol) to more aggressive (Lyrica) and included an x-ray to ensure there was no new injury present. Further, there was no objective evidence that Plaintiff's pain was an urgent medical matter. When Plaintiff was seen on February 10, 2017, he related no complaints regarding pain and told the provider he was happy. ECF No. 16-3 at 9–10. Additionally, when he was seen on February 15, 2017, Plaintiff did not exhibit any objective symptoms indicating he was experiencing issues related to the old "orbital floor fracture" and offered no complaints of serious facial pain. *Id*. at 13–18. Plaintiff's sick call slips were all evaluated as routine, and inmates must often wait 2–4 weeks to see a provider in such cases. *See* ECF No. 16-4 ¶ 7. While Plaintiff alleges that he was not seen in a timely manner and that his initial prescriptions for Tylenol were ineffective, there is no evidence to suggest that treatment was withheld because of a callous or reckless disregard for his pain. An inadvertent failure to provide adequate medical care is not a constitutional violation. *Estelle*, 429 U.S. at 105. Therefore, Defendants' Motion for Summary Judgment will be granted.[6]

---

[6] Plaintiff's claims against Holden must also be dismissed as Holden did not have any personal involvement in any of the conduct alleged to have caused Plaintiff harm. *See* ECF No. 16-5 (Holden Affidavit indicating that she was a medical records technician and was not responsible for scheduling inmate appointments). Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion, construed as a Motion for Summary Judgment, ECF No. 16, shall be granted. A separate Order follows.

Dated: September 21, 2018                              /s/
                                                      GEORGE J. HAZEL
                                                      United States District Judge